## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| TAMMY JO WHARTON McKEE, | ) | |
| | ) | |
| Movant/Defendant, | ) | |
| | ) | |
| v. | ) | 2:08-cv-8039-LSC-PWG |
| | ) | (2:07-cr-0099-LSC-PWG) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent | ) | |

## MEMORANDUM OPINION

Tammy Jo Wharton McKee is serving a 70-month prison sentence based upon her guilty plea to drug and weapons charges in this court. Now *pro se*, McKee moves pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct her federal sentence. (Civ. Doc. 1; Crim. Doc. 41)[1]. The motion has been fully briefed and is ripe for review. Upon consideration, the court concludes that McKee's § 2255 motion to vacate is due to be denied.

## I.    BACKGROUND

In March 2007, a grand jury handed down an indictment against McKee and her co-defendant, Eric James Short. (Crim. Doc. 7). McKee was charged in three counts, as follows:

(Count 1) - attempted possession with intent to distribute "a mixture and substance containing a detectable amount of methamphetamine," in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846;

(Count 2) - carrying a firearm, specifically a Taurus 9mm semi-automatic pistol, during and in relation to a drug trafficking crime, namely, the offense alleged in

---

[1] Citations to "Civ. Doc(s) ___" are to the document numbers assigned to the pleadings in the court file of this § 2255 "civil" case, 2:08-cv-8039-LSC-PWG, as reflected on the docket sheet. Citations to "Crim. Doc. ___" are to the document numbers in the underlying "criminal" case, 2:07-cr-0099-LSC-PWG.

Count One, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and

(Count 4)[2] - being an "unlawful user[ ] of controlled substances, that being methamphetamine," in knowing possession of a firearm, again, the Taurus 9mm, in violation of 18 U.S.C. § 922(g)(3).

(Crim. Doc. 7).

McKee was provided counsel and initially pled not guilty. Subsequently, however, she entered into a plea agreement with the government and changed her plea to guilty on all three counts. (*See* Crim. Docs. 21, 22; Civ. Doc. 8-6). Included in the plea agreement was an appeal waiver providing in relevant part as follows:

> In consideration of the recommended disposition of this case, I, Tammy Jo Wharton McKee, hereby waive and give up my right to appeal my conviction ... and/or sentence the court might impose on me. Further I waive and give up the right to challenge any conviction or sentence imposed or the manner in which the sentence was determined in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255, subject to the following limitations:
>
> The defendant reserves the right to contest in an appeal or post-conviction proceeding any or all of the following:
>
> (a)     Any sentence imposed in excess of the applicable statutory maximum sentence(s); and
>
> (b)     Any sentence that constitutes an upward departure from the advisory guideline sentencing range calculated by the court at the time sentence is imposed.

(Crim. Doc. 22 at 13-14).

After McKee pled guilty, the United States filed a motion pursuant to the plea agreement requesting that the court downwardly depart based upon McKee's substantial assistance in the prosecution of others under USSG § 5K1.1 and 18 U.S.C. § 3553(e). (Crim. Doc. 27). The court

---

[2]McKee was not the subject of Count Three of the indictment.

granted that motion and, on September 21, 2007, entered a judgment sentencing McKee to a total prison term of 70 months.  (Crim. Doc. 30).  That sentence was comprised of 36 months each on Counts One and Four, to run concurrently with each other; plus 34 months on Count Two, to run consecutively with the term on the other two counts.  (*Id.*)  McKee did not appeal.

McKee timely filed her instant *pro se* motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255.  (Civ. Doc. 1; Crim. Doc. 41 ("§ 2255 Mot.")).  She also has filed a supporting memorandum of law.  (Civ. Doc. 6 ("Dft. Brief")).  In those filings she raises the following grounds for relief:

(1)     that she was denied her right to appeal because her lawyer advised her, allegedly she claims, that she had waived such right by virtue of the plea agreement (§ 2255 Mot. at 4-5; Dft. Brief at 3);

(2)     that she was wrongly convicted of carrying a firearm for which she had a permit and that she alleges was not used in connection with the drug offense (§ 2255 Mot. at 5; Dft Brief at 4-5);

(3)     that her due process rights were violated in that, when she signed the plea agreement, "there was no evidence presented to prove the exact amount of drugs for which I was charged," and that the only evidence offered was hearsay and was not proven beyond a reasonable doubt (§ 2255 Mot. at 5; Dft. Brief at 5-6); and

(4)     that her plea agreement was "faulty" because she thought she "was agreeing to one-half ounce" but she understood later that she had "agreed to more than the amount they said I was on my way to pick up."  (§ 2255 Mot. at 6; Dft. Brief at 6-7).

The United States filed a response in opposition with attached exhibits (Civ. Doc. 8 ("Gov't Brief")), which included several documents already in the court file of the criminal case, plus the plea hearing transcript. (Civ. Doc. 8-6 ("Plea Trans.")).  McKee filed a reply to the government's opposition. (Civ. Doc. 10 ("Dft. Reply")).

## II.     DISCUSSION

### A.     Validity of Guilty Plea and Plea Agreement

McKee asserts that her "plea agreement" was "faulty" in that, when she agreed to it, it was her "understanding" that she "was agreeing to one-half ounce," but she later "detected" that she was "agreeing to more than the amount they said I was on my way to pick up." (§ 2255 Mot. at 6). She clarifies in her brief that this claim challenges the validity of her guilty plea on the ground that it was not voluntary and intelligent. (Dft. Brief at 6-7); *see also Bousley v. United States*, 523 U.S. 614, 618 (1998); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). In her reply brief, McKee further alleges that her attorney "coerced [her] into signing" her plea agreement and pleading guilty because he told her that she "would receive a higher sentence" if she did not plead guilty. (Dft. Reply at 5).

Assuming that these claims are not procedurally defaulted and are otherwise properly subject to review by this court, they are without merit. Here, the record wholly belies any suggestion by McKee that her entry into the plea agreement or her guilty plea were anything but knowing and voluntary. McKee, who acknowledged that she has a college degree, signed the plea agreement itself (Crim. Doc. 22), initialed and signed a detailed "Guilty Plea Advice of Rights Certification" (Crim. Doc. 22), and the court thereafter engaged her in a lengthy plea colloquy explaining her rights. (Civ. Doc. 8-6). McKee has failed to allege facts showing that her counsel provided ineffective assistance or that the court committed error in connection with her plea agreement or her guilty plea. Thus, McKee's plea agreement and her guilty plea agreement are valid. *See United States v. Smith*, 654 F.3d 1263, 1265 (11th Cir. 2011); *United States v. Frye*, 402 F.3d 1123, 1127 (11th Cir. 2005); *United States v. Cole*, 415 Fed. App'x 147, 148-49 (11th Cir. 2011). These claims are due to be denied.

**B.**     **Denial of Right to Appeal - Ineffective Assistance of Counsel**

McKee also contends that she was denied her right to appeal because of the conduct of her attorney.  In particular, she alleges that, following her sentencing hearing, she asked her attorney whether she could appeal to claim that district judge had miscalculated her sentence under the United States Sentencing Guidelines (the "Guidelines") in connection with his determination regarding the amount of drugs involved in her case.  Her attorney responded, she claims, by telling her that she could not pursue an appeal on such a ground because it would be barred by the appeal waiver in her plea agreement.  McKee argues that her counsel's advice on that score was incorrect because she claims she was legally authorized to have pursued such a sentencing issue under the exceptions to the appeal waiver.  Although McKee does not allege that she ever directed her attorney to pursue an appeal, she suggests that her attorney's erroneous advice caused her to forego that right.

The legal standard governing the disposition of ineffective-assistance-of-counsel claims is derived from the benchmark case of *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court established a two-prong test for adjudicating ineffective-assistance-of-counsel claims.  First, the movant must show that counsel's performance was deficient. *Id.* at 687.  The proper measure of attorney performance is "reasonableness under prevailing professional norms." *Id.* at 688.  Counsel is "strongly presumed" to have rendered adequate assistance and to have exercised reasonable professional judgment.  *Id.* at 690.  Second, the movant must show that counsel's deficient performance prejudiced the defense.  *Id.* at 687.  To prove prejudice, the movant must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's unprofessional errors. *Strickland*, 466 U.S. at 694.

In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the Supreme Court applied the test set forth

in *Strickland* and reiterated the long established rule that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a professionally unreasonable manner.  528 U.S. at 476-77.  The Supreme Court further held that, even when a defendant has not specifically instructed his counsel to file an appeal, in order to determine whether counsel performed deficiently, a court must inquire into whether counsel in fact consulted with the defendant about an appeal.  *Id.* at 478.  "If so, the attorney has only acted unreasonably if he has ignored the client's wishes to appeal the case....  If not, the court must further inquire whether the attorney had an affirmative duty to consult."  *Gomez-Diaz v. United States*, 433 F.3d 788, 791-92 (11th Cir. 2005) (citing *Flores-Ortega*, 528 U.S. at 478).  The duty to consult arises when either: (1) any rational defendant would want to appeal; or (2) the defendant reasonably demonstrated an interest in appealing. *Id.* (citing *Flores-Ortega*, 528 U.S. at 480); *see also Devine v. United States*, 520 F.3d 1286, 1288-89 (11th Cir. 2008); *Otero v. United States*, 499 F.3d 1267 (11th Cir. 2007). To show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient performance, he would have timely appealed.  *Flores-Ortega*, 528 U.S. at 484.  However, to establish prejudice the defendant need not demonstrate further that he had arguably meritorious grounds to argue on appeal.  *See id*; *Gomez-Diaz*, 433 F.3d at 793-94 (where counsel's performance was deficient based on a failure to comply with the defendant's specific instruction to appeal, defendant was entitled to an out-of-time appeal notwithstanding that the defendant's *pro se* § 2255 motion did not articulate a claim that would have fallen outside the scope of the appeal waiver in his plea agreement).

The government first argues in response that this ineffective-assistance claim under *Roe-Ortega*, along with each of the other claims McKee asserts in her § 2255 motion, is barred by the

terms of her plea agreement.  The government maintains that McKee entered into the agreement and

pled guilty voluntarily and knowingly and that McKee expressly agreed therein to waive her right

to appeal or collaterally attack, under § 2255 or otherwise, her conviction or sentence unless a claim

fits within the exceptions to the appeal waiver in the plea agreement.  Those exceptions do not apply

here, the government argues, because they allow her to contest only a sentence imposed above the

statutory maximum or a sentence that constitutes an upward departure from the Guideline sentence

as determined by the court, and her *Flores-Ortega* claim does not qualify as either type of challenge.

Where a defendant has expressly waived the right to an appeal or to mount a collateral attack

as part of a plea agreement, such a waiver is generally enforceable, consistent with its terms, where

entered into knowingly and voluntarily.  *See Smith*, 654 F.3d at 1265; *Williams v. United States*, 396

F.3d 1340, 1342 (11th Cir. 2005).  As stated previously, the record establishes beyond question that

McKee entered into the plea agreement and pled guilty knowingly and voluntarily.  Thus, the plea

agreement waiver limiting her right to appeal or mount collateral attack is generally valid.  The

question remains, however, whether that waiver covers her instant § 2255 claim that she was denied

her right to appeal by counsel's ineffectiveness under *Flores-Ortega*.

A waiver in a plea agreement may preclude a § 2255 claim alleging that counsel provided

ineffective assistance at sentencing.  *Williams* 396 F.3d at 1342.  On the other hand, even a valid

waiver will not preclude a § 2255 claim alleging that counsel's ineffective assistance led the

defendant to enter into the plea agreement containing the waiver in the first place.  *Patel v. United

States*, 252 Fed. App'x 970, 974-975 (11th Cir. 2007).  Further, in *Gomez-Diaz*, the Eleventh Circuit

held that a defendant was entitled to § 2255 relief on his *Flores-Ortega* claim despite having signed

a plea agreement containing a waiver of his right "to appeal [his] sentence, directly or collaterally,

7

... except for an upward departure by the sentencing judge, a sentence above the statutory maximum, or sentence in violation of the law apart from the sentencing guidelines." 433 F.3d at 790. In so doing, the court concluded that "since the defendant had not waived *all* of his appellate rights, if the evidence showed that he had asked his attorney to appeal, he would then be entitled to an out-of-time appeal." *Id.* at 793-94 (citing *United States v. Garrett*, 402 F.3d 1262, 1266-67 (10th Cir. 2005) (emphasis original)); *see also Patel*, 252 Fed. App'x at 973 ("As we determined in *Gomez-Diaz*, ... an appeal waiver does not relieve counsel of the duty to file a notice of appeal on request."). Based upon *Gomez-Diaz*, McKee's *Flores-Ortega* claim is not barred based upon the appeal and collateral attack waiver in her plea agreement. *See Mendez v. United States*, 2011 WL 4442658, *2 (M.D. Fla. 2011) (recognizing that the principles of *Flores-Ortega* "apply with equal force even though Petitioner's plea agreement contains a partial waiver of his rights to appeal and collaterally attack his sentence," citing *Gomez-Diaz*).[3]

Although the *Flores-Ortega* claim is not barred by the plea agreement waiver, the court concludes that the claim is without merit. Unlike the defendant in *Gomez-Diaz*, McKee does not allege that she ever instructed her counsel to file an appeal. Rather, McKee contends that she asked her counsel if she could appeal on the ground that the district court had erred in calculating her guideline sentence based on its determination as to the amount of drugs involved in her case. She

---

[3]Some have interpreted *Gomez-Diaz* as deciding only that a *Flores-Ortega* claim can be heard on § 2255 review in the face of a plea agreement that contains a waiver that limits the defendant's right to pursue claims on *direct appeal* but does not limit *collateral* challenges, as under § 2255. *See Simmons v. United States*, 2012 WL 32449, *3-5 (S.D. Ga. 2012); *Jones v. United States*, 2011 WL 5554027, *6 (S.D. Ga.), adopted, 2011 WL 5554022 (S.D. Ga. 2011). The problem with that analysis is that the waiver in *Gomez-Diaz* stated on its face that it was a limitation on the defendant's right to appeal his sentence "directly or collaterally." 433 F.3d at 790. As such, the waiver in *Gomez-Diaz* purported to apply to both direct appeal and collateral challenges, not merely the former.

contends that he provided ineffective assistance because he told her, erroneously, she argues, that she could not pursue such a claim because the appeal waiver in her plea agreement foreclosed it. She suggests that, had her counsel correctly advised her that such a claim was available, she would have insisted that he pursue such a claim on appeal.

The problem for McKee is that her belief that her counsel's advice on the matter was wrong is itself simply incorrect. The appeal waiver in her plea agreement authorized her to pursue claims on appeal only to the extent that they were based on an argument that her sentence was either "imposed in excess of the applicable statutory maximum" or "constitutes an upward departure from the advisory guideline sentencing range calculated by the court at the time sentence is imposed." It is undisputed that McKee's sentence was both *well below* the statutory maximum and was a *downward* departure from the guideline range, based upon the government's motion recognizing that McKee had provided substantial assistance. Accordingly, there were *no* claims that McKee could have appealed given the broad scope of the waiver, the overwhelming evidence that McKee's plea agreement was counseled and voluntary, and the enforceability of such waivers in the Eleventh Circuit. Despite her assertions to the contrary, McKee certainly could not have pursued, under either exception to the waiver, the type of drug-quantity claim on appeal she proposed to her attorney following her sentencing. *See United States v. Triana*, 372 Fed. App'x 20, 21-22 (11th Cir. 2020); *United States v. Grinard-Henry*, 399 F.3d 1294, 1296-97 (11th Cir. 2005); *United Stats v. Pease*, 240 F.3d 938, 942 (11th Cir. 2001). As a result, in those circumstances, counseling McKee that she had affirmatively waived her appeal rights in the plea agreement, including as to her proposed claim, was neither incorrect as a matter of fact or law, nor was it deficient under *Strickland* and *Flores-Ortega*.

Relying upon *United States v. McCoy*, 508 F.3d 74 (1st Cir. 2007), McKee nonetheless insists that her attorney's advice was wrong and that she could have asserted her drug-weight claim despite the waiver.  In *McCoy*, the defendant pled guilty to wire fraud and conspiracy to launder money and was sentenced to 46 months imprisonment, based in part upon the district court's determination regarding the amount of the loss intended or inflicted as a result of the defendant's criminal conduct under USSG § 2B1.1(b)(1).  *Id.* at 76-77.  On appeal, the defendant sought to challenge the district court's determination as to the amount of the loss and the resulting effect it had on the guidelines range.  *Id.* at 77.  The government argued that the claim was barred by the defendant's plea agreement, which included an appeal waiver that effectively precluded him from challenging any sentence that fell "within the guideline range."  *Id.* at 77-78.  The First Circuit then proceeded to hold that such a waiver did not encompass the defendant's claim, which was based on the assertion that the district court had erred in calculating the applicable guideline range in the first place.  *Id.* at 78.

McKee's reliance on *McCoy* is misplaced because the terms of the respective plea agreement appeal waivers in her case and *McCoy* are materially different.  While McCoy was precluded only from challenging a sentence "within the guideline range," the appeal waiver in McKee's case is far broader, operating to bar any claims except insofar as they claimed that her sentence exceeded the statutory maximum or represented an upward departure from the guideline sentence.  Accordingly, *McCoy* is distinguishable, and does not aid McKee.  *See United States v. Keller*, 665 F.3d 711, 718 (6th Cir. 2011); *Sotirion v. United States*, 617 F.3d 27, 34 n. 7 (1st Cir. 2010); *United States v. Corso*, 549 F.3d 921, 928 (3d Cir. 2008) (all similarly distinguishing *McCoy* based on the narrow scope of the terms of the appeal waiver there).  McKee's claim alleging ineffective assistance under

*Flores-Ortega* is due to be denied.

###### C.     Claims Alleging Insufficient Evidence

In her remaining claims, McKee contends that two of her convictions are invalid on the basis that the offenses were not proven by sufficient evidence.  Specifically, she challenges her conviction under Count Two for carrying a firearm during and in relation to a drug offense, in violation of 18 U.S.C. § 924(c)(1)(A), on the basis that she had a "permit" for the gun and that the evidence was otherwise insufficient to establish the offense.  She similarly contests her conviction under Count One for attempted possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846.  On that count, she asserts that "there was no evidence to prove the exact amount of the drugs for which [she] was charged" and the evidence that was presented on the charge was hearsay and was not proven beyond a reasonable doubt.

These claims are barred because they fall within the scope of the collateral attack waiver in McKee's plea agreement, which the court has previously recognized to be valid. and enforceable. Even if the waiver was not enforceable, these claims are procedurally defaulted because they would have to have been raised on direct appeal but were not.  While procedurally defaulted claims may be reviewed where a defendant establishes either cause and prejudice or actual innocence, *see Bousley*, 523 U.S. at 622, McKee has not pled allegations sufficient to excuse the default.

But even further assuming that these claims were subject to review, they would still fail on the merits.  Defendants may plead guilty and be held accountable even for crimes that they did not commit or for which the evidence is insufficient to support; the real question is whether the plea was made voluntarily, knowingly, and intelligently. *United States v. Chubbuck*, 252 F.3d 1300 (11th Cir. 2001).  The court has previously held that McKee's plea was valid.   Further, the fact that McKee

11

might have had a weapons permit for the gun would not preclude her from being prosecuted for unlawfully carrying it under § 924(c)(1)(A). *See United States v. McCurdy*, 438 Fed. App'x 883, 884-85 (11th Cir. 2011). And given that she was charged with and pled to "carrying" a firearm, her assertion that she did not "use" the firearm as the word was construed in *Bailey v. United States*, 516 U.S. 137 (1995), is inapposite. *See generally Muscarello v. United States*, 524 U.S. 125 (1998) (interpreting the meaning of "carries a firearm" in § 924(c)(1)). It also does not matter to her guilty-plea conviction on the drug offense in Count One under § 841(b)(1)(C), there may have been no attempt to establish the specific quantity or the exact type of controlled substance involved in her case. *See United States v. Sanders*, ___ F.3d ___, ___, 2012 WL 308540, *10 (11th Cir. Feb. 12, 2012); *United States v. Baker*, 432 F.3d 1189, 1233-34 (11th Cir. 2005); *United States v. Mejia*, 97 F.3d 1391, 1392-93 (11th Cir. 1996). These claims are due to be denied.

## III.   CONCLUSION

Based on the foregoing, McKee's § 2255 motion (Civ. Doc. 1; Crim. Doc. 41) is due to be DENIED. A separate final order will be entered.

Done this 12th day of March 2012.

_____     2620
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE